IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| GILBERT CAMPA, | Cause No. CV 22-86-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER |
| YELLOWSTONE COUNTY DETENTION FACILITY TURNKEY NURSE STAFF, | |
| Defendants. | |

On August 15, 2022, Plaintiff Campa moved to proceed in forma pauperis (IFP) with this action alleging violation of his right to adequate medical care as a convicted prisoner. *See* Compl. (Doc. 2). Campa was granted leave to proceed IFP and it was determined Campa's allegations were sufficient to require an answer. (Doc. 10.)[1]

Defendants filed a motion to dismiss Campa's complaint and brief in

---

[1] Because Campa is a prisoner proceeding IFP, his Complaint required a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). This *sua sponte* screening procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that a defendant may later bring. *See Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007); *see also Lucas v. Jovanovich*, 2016 WL 3267332, at *3 (D. Mont. June 10, 2016).

support. (Docs. 16 & 17.) Defendants allege Campa failed to state a claim upon which relief could be granted and seek dismissal of the complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 17.) Campa opposes the motion to dismiss. (Doc. 18.)

### Summary of Campa's Allegations

Campa was incarcerated at the Yellowstone County Detention Facility (YCDF) from August 3, 2022, to August 17, 2022, while awaiting transfer to Montana State Prison. Campa generally alleges the Turn Key Nursing Staff at YCDF have a policy of allowing insufficient time for inmates to ingest suboxone, an anti-withdrawal medication, and that they know the policy causes vomiting and insufficient absorption of the medication. Campa alleges that all medical professionals direct that suboxone sublingual film must stay under the tongue for no less than 20 minutes and that it is not effective if not fully dissolved over that period of time. Campa claims he was not provided sufficient time for the medication to dissolve and that swallowing the film exacerbated his stomach problems and caused vomiting. *See* Compl. (Doc. 2) at 1–4. Campa states he grieved the issue via YCDF's grievance process. (*Id.* at 5.) Campa seeks $375,000 in damages. (*See id.* at 6.)

### Defendants' Contentions

Defendants claim that Campa has failed to assert any medical staff knew that

2

not providing him additional time for the Suboxone film to dissolve in his mouth

caused serious harm to his health and safety. (Doc. 16 at 8.) Specifically, on

August 10, 2022, Nurse Silbernagel responded to Campa's grievance and indicated

she and others on the staff had provided Campa with 10 minutes, per the drug

manufacturer's guidelines, but that he would be given additional time, if necessary,

for the strip to dissolve. (*Id.*); *see also* (Doc. 16-1 at 1.) Defendants argue that

Campa's request for additional time for the medication to dissolve demonstrates a

difference of opinion and, at most, amounts to negligence, which is insufficient to

state a viable claim under § 1983. (Doc. 16 at 9.) Defendants assert that Campa

has not alleged sufficient facts, acts, or omissions to show that any defendant was

deliberately indifferent to his serious medical needs.

Defendants also argue that Campa has failed to state a colorable medical

care claim against them under *Monell v. Dept. of Social Services of the City of New

York*, 436 U.S. 658 (1978). (*Id.* at 9.) That is, Campa has not alleged that the

constitutional deprivation at issue was the result of Turn Key's official written

policy for Suboxone use. Similarly, Defendants argue Campa failed to establish

that Turn Key engaged in a longstanding and pervasive custom or practice that

resulted in the alleged constitutional violation. Campa was incarcerated in this

matter was for a period of 14 days. Defendants claim that Campa cannot establish

a longstanding custom or practice that corresponds with this relatively short time

3

period.  (*Id.*, *citing Monell*, 436 U.S. at 694.)  Additionally, Defendants assert

Campa failed to show that such a custom or practice came from somebody at the

policymaking level.  (*Id.*)  In short, Defendants argue that to the extent Campa has

asserted a *Monell* claim, he failed to establish that any Turn Key policy, custom, or

practice violated his constitutional right to receive medical care or caused his

injuries.  (*Id.* at 11-12.)

**Standards Governing Motion to Dismiss**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citation

omitted).  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.*  The Court ordinarily must construe a *pro se*

litigant's pleading liberally and hold a *pro se* plaintiff "to less stringent standards

than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89,

94 (2007)(citation omitted).

The Court must accept as true all non-conclusory factual allegations

contained in the complaint and must construe the complaint in the light most

favorable to the plaintiff. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F. 3d 981,

989 (9th Cir. 2009).  "Generally, a court may not consider material beyond the

4

complaint in ruling on a Fed. F. Civ. P. 12(b)(6) motion." *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F. 3d 1048, 1052 (9th Cir. 2007)(citation omitted).  The Court may consider "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F. 3d 1202, 1212 (9th Cir. 2012)(citation omitted); *Schneider v. Cal. Dep't of Corr.*, 151 F. 3d 1194, 1197 n.1 (9th Cir. 1988)("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.")(citations omitted; emphasis in the original).  The court may also consider documents referenced in the complaint under the incorporation by reference doctrine when the authenticity of the subject document is uncontested and the complaint extensively relies upon the subject document. *See Knievel v. ESPN*, 393 F. 3d 1068, 1076 (9th Cir. 2005).

**Analysis**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to the Eighth Amendment prohibition on cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency…" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)(citations omitted).  Prison officials

must provide prisoners with "discrete basic human needs" including "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F. 2d 1080, 1107 (9th Cir. 1986), overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  A prison official may violate a prisoner's Eighth Amendment rights when: (1) objectively, the official's act or omission is so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official acted with deliberate indifference to an inmate's health or safety. *See Farmer*, 511 U.S. at 834.

The Court will presume for purposes of this order that treatment for opioid withdrawal constitutes an objectively serious medical need.  *See Brawner v. Scott Cty.*, 14 F. 4th 585, 598 (6th Cir. 2021)(jury could find that prisoner who was taking suboxone for opioid addiction had objectively serious medical need); *see also Joseph v. Son*, 2023 WL 2480591, at *2 (E.D. Cal. Mar. 13, 2023)(drug withdrawal constitutes a serious medical need requiring appropriate medical care under the Eighth Amendment)(collecting cases).

To demonstrate deliberate indifference, a plaintiff must show that the official knowingly disregarded an excessive risk to inmate health or safety. *Id.* at 837; *Toguchi v. Chung*, 391 F. 3d 1051, 1057 (9th Cir. 2004). This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain

6

or medical need and (b) harm caused by the indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). It is not enough to show a defendant should have known of the risk; actual notice on the part of the prison official is required to show deliberate indifference. *Farmer*, 511 U.S. at 837-38, 843 n.8. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference. *Id.* at 837. This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Id.* at 839. A showing of merely negligent medical care is not enough to establish a constitutional violation. *Frost v. Agnos*, 152 F. 3d 1124, 1130 (9th Cir. 1998), *citing Estelle*, 429 U.S. at 105-06. A mere accident or evaluative mistake is not to be characterized as wanton infliction of unnecessary pain. *See Gamble*, 429 U.S. at 105. Similarly, a difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prisoner officials regarding the necessity for or extent of medical treatment amount to a constitutional violation. *See e.g. Toguchi*, 391 F. 3d 1058; *Sanchez v. Vild*, 891 F. 2d 240, 242 (9th Cir. 1989).

"Deliberate indifference is a high legal standard." *Toguchi,* 391 F. 3d at 1060. As such, prison officers who "act reasonably" cannot be found liable under the Eighth Amendment. *Farmer*, 511 U.S. at 844-45 ("Prison officials who actually knew of a substantial risk to inmate health or safety may be found free

from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

In the instant case, Campa was not denied his suboxone prescription upon arrival at YCDF, nor was administration of the medication delayed. His allegation is simply that he was given insufficient time for the medication to fully dissolve. Two days after his arrival at YCDF, Campa filed an inmate complaint form advising YCDF staff that he believed he needed additional time, up to 20 minutes, for the medication to dissolve and provide its full efficacy. (*See* Doc. 16-1.) Five days later, Nurse Silbernagel responded to Campa's complaint:

> Per manufacturer's Guidelines Suboxone takes 5-10 minutes to dissolve. We give 10 [minutes] and check to see if [the] strip dissolved. If so, you are instructed to drink a glass [of] water & return to your unit. If not, you will be given additional time for [the] strip to dissolve.

(*Id*. at 1.) Seven days later, Campa was transferred to Montana State Prison.

The response to Campa's concern demonstrates a willingness on the part of Defendants to work with Campa and make reasonable accommodations to him to resolve the issue. Moreover, as explained in the response to the grievance, the nursing staff was following the manufacturer's guidelines for administering the medication. Campa has not shown that the Defendants actions in the administration of the Suboxone was medically unacceptable under the circumstances. At most, Campa has demonstrated a difference in opinion between himself and the Turn Key nursing staff. Campa's allegations do not rise to the

8

level of a constitutional violation that could sustain a claim under Section 1983. *See Franklin v. Oregon, State Welfare Div.*, 662 F. 2d 1337, 1344 (9th Cir. 1981)("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a section 1983 claim). Campa has failed to plead a medical care claim against Turn Key Medical Staff surrounding the administration of Suboxone. This claim will be dismissed.

To the extent that Campa attempts to advance a local entity claim under *Monell v. Dep't of Soc. Servs. Of City of N.Y.,* 436 U.S. 658 (1978), such claim also fails. As a preliminary matter, the Court notes Defendants cannot be held liable under a *respondeat superior* theory. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989). To state a *Monell* claim against the County, plaintiff "must demonstrate that an 'official policy, custom, or pattern' on the part of [the County] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F. 3d 1128, 1143 (9th Cir. 2012)(*quoting Harper v. City of Los Angeles*, 533 F. 3d 1010, 1022 (9th Cir. 2008)). To establish municipal liability, " a plaintiff must show (1) he possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F. 3d 432, 438 (9th Cir. 1997).

As set forth above, Campa has failed to establish an Eighth Amendment violation. Following the same line of reasoning, Campa has not alleged that YCDF and/or its medical staff had a custom or established procedure which violated his constitutional rights. He seems to assert that the nursing staff continued to prescribe Suboxone in an inappropriate manner, even after being made aware of Campa's concerns. As outlined above, however, Campa was informed the nursing staff was administering the medication as directed by the manufacturer. But Campa has not alleged a departmental polity or practice that was the "moving force" behind the purported constitutional violation. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F. 3d 950, 957 (9th Cir. 2008). Campa's belief about the inappropriateness of the medication administration is conclusory in nature and does not support the existence of an unconstitutional custom or policy, which is so "persistent and widespread" as to be a "permanent and well settled" policy. *See Hunter v. Cty. of Sacramento*, 652 F. 3d 1225, 1233 (9th Cir. 2011). Campa's complaint fails to "put forth additional facts regarding the specific nature of [the] alleged policy, custom, or practice." *AE ex rel. Hernandez v. Cty of Tulare*, 666 F. 3d 631, 637 (9th Cir. 2012). Further amendment would be futile; this claim will also be dismissed with prejudice.

//

Accordingly, IT IS HEREBY ORDERED:

1.      Defendants' Motion to Dismiss (Doc. 17) is GRANTED.  The Complaint is DISMISSED with prejudice;

2.      The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff.

3.      The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  No reasonable person could suppose an appeal would have merit.

DATED this _8th_ day of May, 2023.

Susan P. Watters
United States District Court Judge